UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | | |
|---|---|---|
| BILLY W. GAMBLE, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 6: 09-410-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | **MEMORANDUM OPINION** |
| Commissioner of Social Security, | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of cross-motions for summary judgment filed by Plaintiff Billy W. Gamble and Defendant Michael J. Astrue, Commissioner of Social Security ("Commissioner") [Record Nos. 11, 12]. Gamble argues that substantial evidence does not support the decision of the administrative law judge ("ALJ") that he is not disabled. He seeks remand for an award of benefits. However, the Commissioner contends that the ALJ's decision is supported by substantial evidence and should be affirmed.

After reviewing the administrative record and the parties' briefs, the Court will grant the Commissioner's motion and deny the relief sought by Gamble. The Court concludes that () the ALJ did not improperly reject the opinions of Gamble's treating physicians, (ii) the ALJ did not improperly substitute his opinion for that of the Gamble's physicians, and (iii) substantial evidence supports the Commissioner's decision that Gamble is not disabled under

the Social Security Act but is capable of performing a range of work even with the functional limitations properly attributed to him by the ALJ.

**I.**

On April 4, 2007, Gamble filed applications for a period of disability and disability insurance benefits under Title II of the Social Security Act and Supplemental Security Income ("SSI") under Title XVI of the Act. He alleged disability beginning March 22 2007.[1] [Tr., pp. 121-128] These applications were denied initially and upon reconsideration. Thereafter, a request for hearing before an ALJ was timely filed. Gamble, his attorney, and vocational expert ("VE") Ralph M. Crystal, Ph.D., appeared before ALJ Roger L. Reynolds on May 6, 2009. [Tr., pp. 19-49] In a hearing decision dated June 24, 2009, ALJ Reynolds found that Gamble was not disabled under sections 216(i) and 223(d) of the Social Security Act and, therefore, was not entitled to a period of disability or disability insurance benefits. The ALJ further found that Gamble was not entitled to SSI because she was not disabled under section 1614(a)(3)(A) of the Act. [Tr., pp. 9-18]

Gamble was forty-nine years old at the time of the administrative hearing. He has a high school education and work experience as a dry wall finisher. [Tr., pp. 45, 162] His current disabling condition stems from an arteriovenous malfunction ("AVM"), being at risk of stroke, inability to walk without assistance, falling, and short and long term memory loss. [Tr., p. 161] After reviewing the record and the testimony presented during the

---

1  Gamble received disability benefits from 1992 through April 2002 due to seizures. After his disability benefits were terminated in 2002, Gamble was employed until March 2007. [Tr., pp. 23-24, 158]

administrative hearing, the ALJ concluded that Gamble suffered from the following severe impairments: degenerative disc disease of the lumbar and cervical spine; coronary artery disease, status-post heart catheterization with stent; continued nicotine abuse; history of transient ischemic attack ("TIA") versus cerebral vascular accident ("CVA"); history of AVM, status-post stereotatic surgery; history of seizure disorder; polysubstance abuse allegedly in remission; unspecified depression; rule out post traumatic stress disorder; and pain disorder. [Tr., p. 11] Notwithstanding these impairments, the ALJ found that Gamble retained the residual functional capacity ("RFC")

> to perform light and sedentary work as defined in 20 CFR 404.1567(b) and 416.967(b), that is, lifting and carrying 20 pounds occasionally, ten pounds frequently, with sitting, standing or walking up to six hours each in an eight hour day. There must be no climbing of ropes, ladders or scaffolds; occasional climbing of stairs and ramps; no work at heights and around industrial hazards; no commercial driving; no balancing; no work with hands over the head, no exposure to concentrated dust, gases, smoke, poor ventilation, temperature extremes or excess humidity. He requires work with simple repetitive, one-two-three step procedures, no frequent changes in work routines, no requirement for detailed or complex problem-solving, independent planning or the setting of goals. He should work preferably in an object-oriented environment with no requirements for extended conversation, coordinated activities, dispute resolution, etc., with members of the general public.

[Tr., p. 14] As a result of this assessment, Gamble was found to be able to perform light assembly work and work as a light bench press operator. The ALJ denied Gamble's request for a period of disability, disability insurance benefits, and SSI. [Tr., p. 18]

**II.**

Under the Social Security Act, a "disability" is defined as "the inability to engage in 'substantial gainful activity' because of a medically determinable physical or mental impairment of at least one year's expected duration." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007); *see also* 42 U.S.C. § 423(d)(1)(A). A claimant's Social Security disability determination is made by an ALJ in accordance with "a five-step 'sequential evaluation process.'" *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006) (en banc) (quoting 20 C.F.R. § 404.1520(a)(4)); *see also* 20 C.F.R. § 416.920(a)(4). If the claimant satisfies the first four steps of the process, the burden shifts to the Commissioner with respect to the fifth step. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

First, the claimant must demonstrate that he is not engaged in substantial gainful employment at the time of the disability application. 20 C.F.R. §§ 404.1520(b), 416.920(b). Second, the claimant must show that he suffers from a severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(c), 416.920(c). Third, if the claimant is not engaged in substantial gainful employment and has a severe impairment which is expected to last for at least twelve months and which meets or equals a listed impairment, he will be considered disabled without regard to age, education, and work experience. 20 C.F.R. §§ 404.1520(d), 416.920(d). Fourth, if the Commissioner cannot make a determination of disability based on medical evaluations and current work activity and the claimant has a severe impairment, the Commissioner will then review the claimant's residual functional capacity and relevant past

work to determine whether he can do past work. If he can, he is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f).

Under the fifth step of the analysis, if the claimant's impairment prevents him from doing past work, the Commissioner will consider his RFC, age, education, and past work experience to determine whether he can perform other work. If he cannot perform other work, the Commissioner will find the claimant disabled. 20 C.F.R. §§ 404.1520(g), 416.920(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 238 (6th Cir. 2002) (quoting *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999)).

Judicial review of the denial of a claim for Social Security benefits is limited to determining whether the ALJ's findings are supported by substantial evidence and whether the correct legal standards were applied. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). The substantial evidence standard presupposes that there is a zone of choice within which decision makers can go either way, without interference from the court. *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). Substantial evidence is such relevant evidence as a reasonable mind might accept as sufficient to support the conclusion. *Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 604 (6th Cir. 2009); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).

If supported by substantial evidence, the Commissioner's decision must be affirmed even if the Court would decide the case differently and even if the claimant's position is also supported by substantial evidence. *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007); *Colvin v. Barnhart,* 475 F.3d 727, 730 (6th Cir. 2007); *Longworth v. Comm'r of Soc. Sec. Admin.*, 402 F.3d 591, 595 (6th Cir. 2005); *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993). Thus, the Commissioner's findings are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g).

## III.

Gamble argues that the Commissioner's final decision regarding the denial of benefits should be reversed and remanded for further proceedings for two reasons. First, he contends that the ALJ erred in evaluating his testimony regarding his pain symptoms and limitations that existed before the onset date of his alleged disability. [Record No. 11, pp. 3-4] Second, he asserts that the ALJ erred in substituting his opinion for that of his treating physicians, Dr. James Chaney and Dr. Christa Muckenhausen. [Record No. 4-5] However, after considering the administrative record and the ALJ's rationale for the weight given to these opinions, the Court finds both arguments unavailing.

### A.     **The ALJ Properly Evaluated the Claimant's Credibility.**

Although Gamble acknowledges that the ALJ may properly assess allegations of pain as part of his credibility determination, he contends that the ALJ erred because he failed to properly explain his reasons for rejecting his testimony. [Record No. 11, pp. 3-4] Citing Social Security Ruling 96-7p, he argues that, "it is not sufficient for the adjudicator to make

a single, conclusory statement that 'the individual's allegations have been considered' or that 'the allegations are (or are not) credible.' It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms.'" *Id.* Again, however, the Court finds that the ALJ properly explained the basis for giving little weight to Gamble's testimony.

At page 7 of his decision, ALJ Reynolds explains the reasons for finding Gamble's credibility to be poor.

> In terms of the claimant's alleged symptoms and limitations in light of the objective medical evidence and other factors, there is insufficient evidence to support symptoms to the extent alleged. When subjective allegations, complaints of pain and limitation are weighed against objective medical evidence, credibility is poor. On the Seizure Questionnaire submitted and dated October 22, 2007, the claimant alleges having a seizure every month that occurs during the day but he reported to the VA physicians that he has had no seizures in six years and he was off Tegretol. There were many internal inconsistencies of record such as his saying he does not smoke and has not smoked in a long time, but he was smoking a pack of cigarettes a day as recently as November 2008 according to Ace Clinique treatment notes (Exhibit 21F). The claimant alleges arteriovenous malformation (AVM) and epilepsy. In 1991, the claimant had an AVM, which is an abnormal junction of an artery and a vein, in his brain that was as large as a quarter. He had corrective surgery in 1992 and he received supplemental security income from March 1992 to April 1, 2002 when he went back to work. He worked as recently as 2007. He alleges epilepsy keeps him from working but he told his physicians at the VA that he had had no seizures in six years. Neurological examination was normal and Tegretol was discontinued in 2006; magnetic resonance imaging and MRA of the brain in 2007 showed no residual AVM. He alleges he had a stroke in 2007 but Dr. Chankarama only diagnosed a temporary ischemic attack as the etiology of the left hemiparesis was unclear and there were no apparent residuals from the attack found on examination by Dr. Burns in August 2007. There was no evidence of a cerebral vascular accident or stroke and no AVM seen on recent imaging reports (Exhibit 1F, 7F, 20F). The claimant alleges he is unable to do anything for fear of another cerebral vascular accident, however, he enjoys a wide range of activities; he drives,

attends sporting events, visits friends, goes to church. It is noteworthy that following the stroke while in the hospital, physical therapy evaluators noted the claimant had no complaints of pain, had 4+/5 strength on the left side and grasping and pinching were within normal limits (Exhibit 2F, pages 31-34).

[Tr., p. 15] Thus, the record supports the ALJ's determination that Gamble provided inconsistent statements regarding the frequency of seizures. Further, the objective medical reports of Gamble's condition following the 2007 incident indicate that he had significantly recovered shortly after the event.

The ALJ's credibility determination is entitled to "great weight and deference" provided it is "reasonable and supported by substantial evidence in the record." *Jones*, 336 F.3d at 476. In light of Gamble's conflicting statements and conflicting, objective medical evidence, that standard is more than met here. As the Sixth Circuit has recognized,

> [w]hile it might be ideal for an ALJ to articulate his reasons for crediting or discrediting each medical opinion, it is well settled that[] "an ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party. Nor must an ALJ make explicit credibility findings as to each bit of conflicting testimony, so long as his factual findings as a whole show that he implicitly resolved such conflicts."

*Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 507-08 (6th Cir. 2006) (applying harmless-error standard where "the ALJ merely failed to explain why he favored several examining physicians' opinions over another's").

**B.     The ALJ Properly Evaluated the Opinions of Examining and Non-Examining Sources.**

Gamble also argues that ALJ Reynolds "placed no reliance upon the opinions of [Drs. Chaney and Muckenhausen]" but, instead, improperly substituted his opinion. [Record No.

11, p. 4] According to Gamble, both of the treating physicians diagnosed him with back pain and depression/anxiety. Further, he contends that the treatment notes from Dr. Chaney indicate that he has suffered from these conditions for several years. Contrary to this argument, the ALJ properly considered the medical records from these physicians and explained his reasons for giving greater weight to other medical sources.

Generally, the opinion of a source who has examined the claimant is entitled to greater weight than the opinion of a non-examining source. 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1). In deciding how much weight to give an opinion, however, the ALJ must consider a number of other factors, including how consistent the opinion is with the record as a whole. 20 C.F.R. §§ 404.1527(d)(4), 416.927(d)(4); *see also Warner v. Comm'r of Soc. Sec.*, 375 F3d. 387, 390-91 (6th Cir. 2004) (weight to be given to physician's opinion depends on the extent to which it is supported by the objective medical signes and laboratory findings and is consistent with the record as a whole). The ALJ must explain the weight he gives to an opinion. 20 C.F.R. §§ 404.1527(f)(2)(ii), 416.927(f)(2)(ii).

At page 8 of his decision, ALJ Reynolds Paris explains his reasoning for the weight given to Dr. Chaney's opinion.

> The Administrative Law Judge discounts the debilitating report of James Ace Chaney dated February 5, 2009 (Exhibit 22F). Dr. Chaney reported the claimant has weakness and loss of sensation in left upper and lower extremities, loss of balance, left hip and low back pain and left foot pain that disables the claimant from full-time work since March 23, 2007 and in the future. The final responsibility for deciding whether an individual is disabled under the Act is reserved to the Commissioner (Social Security Ruling 96-5p). Dr. Chaney's opinion was not ignored, however, Dr. Chaney overstated the impact of the stroke. The physicians at the Appalachian Regional Hospital

referred to the "stroke" as a transient ischemic attack based on their examinations and clinical and laboratory tests date during the claimant's hospitalization following the attack. The evidence as a whole does not support Dr. Chaney's assessment. Jyotin Chandarana, MD, said there was no evidence of a stroke (Exhibit 20F) and Dr. Chaney himself said on March 27, 2007 that he found a "completely normal CT scan of brain – no acute infarct, mass, hemorage, or other pathology . . ." (Exhibit 21F).

[Tr., p. 16] In addition to Dr. Chandarana's finding (*i.e.,* that the 2007 incident was a TIA, not a stroke) and the conflicting statements of Dr. Chaney, the medical report of Dr. Burns and medical testing immediately following the incident indicate that Gamble did not suffer debilitating residual affects. As the ALJ pointed out:

> It is noteworthy that following the stroke [TIA] while in the hospital, physical therapy evaluators noted the claimant had no complaints of pain, had 4+/5 strength on the left side and grasping and pinching were within normal limits (Exhibit 2 F, pages 31-34).
>
> As for the opinion evidence, Dr. Burns opined that the claimant is able to move about, sit, stand, lift, carry, handle objects, hear, see, speak, travel without limitation; this assessment is given great weight, as it is consistent with the overall normal medical findings. . . .

[Tr., p. 15]

ALJ Reynolds also provided sufficient explanation and reasoning for rejecting the conclusions of Dr. Muckenhausen. As he noted at page 8 of his decision,

> Christa U. Muckenhausen, MD, saw the claimant May 19, 2008; however the Administrative Law Judge rejects her assessment (Exhibit 14F). Her assessment of work-related abilities limited the claimant to less than sedentary work activity exertionally and fair to poor ability to make occupational, job performance and personal/social adjustments but is based primarily on subjective complaints of the claimant and her very restrictive assessment appears to be an accommodation attempt to help the claimant as it is inconsistent with the overall objective evidence of record.

> From a mental standpoint, the claimant reported limitations in memory, concentration, completing tasks, understanding/following instructions and dealing with stress. Interpersonal problems were denied. There is no history of mental health treatment and a hospital note in March 2007 described the claimant as not depressed and doing well with intact attention, short term and long term memory and sequencing skills. Activities of daily living as discussed herein[2] are not reflective of an inability to do basic work activity. Consultative examination findings were essentially normal and Dr. Couch described the claimant as overly dramatic in presentation but denied depression, had no evidence of distress, had good attention and concentration and no evidence of memory impairment. IQ and memory scores were within normal limits. Mental screening for post traumatic stress disorder was negative according to the VA report. There is no objective evidence of functional limitations to the degree alleged due to alleged mental impairment.

[Tr., p. 16] And as the Commissioner points out in his brief, a doctor's opinion based on subjective evidence is not a medical opinion. *Young v. Secretary of Health and Human Services,* 925 F.2d 146, 151 (6th Cir 1990). Thus, it is clear from the above-quoted section of the ALJ's opinion that he fully and completely considered the reports and opinions of Drs. Chaney and Muckenhausen, but gave them limited weight based on the objective medical evidence in the record that clearly conflicted with their conclusions regarding Gamble's claimed disability.[3]

---

2   Activities of daily living are discussed at pages 4-5 of the ALJ's decision. [Tr., pp. 12-13]

3   The consultative examination performed by Dr. Burns on August 18, 2007 support his conclusion that the claimant was able to perform activities involving sitting, standing, moving about, lifting, carrying, handling objects, hearing, seeing, speaking or traveling. In essence, Gamble's examination was within normal limits. [Tr., pp. 370-373] The psychological consultative examination performed on August 14, 2007, by Melissa R. Couch, Ph.D., indicate that Gamble was fully oriented to time, place, person and situation, but had a "dramatic and showy interpersonal style" with statements that were often exaggerated or dramatic in presentation. At the time of this examination, Gamble did not have symptoms of depressive disorder or mania. Likewise, he did not have memory problems, but had good concentration and attended properly. Couch also observed that the claimant could perform simple math, had a good fund of information, abstract reasoning, vocabulary and social judgment. Based on her examination, Couch concluded that Gamble's mental status did not significantly impair his functional capacity. [Tr., pp. 362-368] The state agency reports of Dr.

## C. Substantial Evidence Supports the Commissioner's Decision.

During the administrative hearing, ALJ Reynolds posed a hypothetical question to the VE which included the residual functional limitations affecting Gamble. [Tr., pp. 45-46] In response, the VE responded that while the claimant would be unable to perform his past work, there were jobs that he could perform. Testimony by a VE in response to a hypothetical may serve as substantial evidence in support of an ALJ's determination that there is work the claimant can perform, provided the hypothetical "accurately portrays [the claimant's] individual physical and mental impairments." *Howard*, 276 F.3d at 238 (internal quotation omitted). An ALJ must first "evaluat[e] the medical evidence and the claimant's testimony to form an 'assessment of [her] residual functional capacity.'" *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004) (quoting 20 C.F.R. § 416.920(a)(4)(iv)) (second alteration in original). Then, "[t]he vocational expert testifies on the basis of [the] claimant's 'residual functional capacity and . . . age, education, and work experience'" to determine whether the claimant can do her past relevant work or "'can make an adjustment to other work.'" *Id.* (quoting 20 C.F.R. § 416.920(a)(4)(v)); 20 C.F.R. §§ 404.1560(b), 416.960(b).

Here, substantial evidence supports the ALJ's findings regarding Gamble's limitations. Therefore, the VE's testimony in response to a hypothetical based on the

---

Saranga (November 20, 2007), and psychologists Cutler and Ross (August 2007 and November 2007) also support the ALJ's findings and conclusions. [Tr., pp. 415-422, 377-390, 401-414]

claimant's RFC is substantial evidence supporting the ALJ's finding that Gamble is not disabled as that term is defined under the relevant Social Security regulations.

## IV.

Although Gamble suffers from a number of medical impairments, he has not established that his symptoms are severe enough to warrant supplemental security income, a period of disability, or disability insurance benefits. The ALJ did not give improper weight to the opinion of Dr. Chaney or Dr. Muckenhausen or to the opinions of consultative and state agency examiners. Further, the hypothetical posed to the vocational expert and adopted by the ALJ accurately reflected Gamble's physical and mental limitations based on the evidence in the record. Viewing the record as a whole, substantial evidence supports ALJ Reynolds' determination that Gamble is not disabled. Accordingly, it is hereby

**ORDERED** as follows:

(1)  Plaintiff Billy W. Gamble's Motion for Summary Judgment [Record No. 11] is **DENIED**;

(2)  Defendant Michael J. Astrue's Motion for Summary Judgment [Record No. 12] is **GRANTED**; and

(3)  The administrative decision will be **AFFIRMED** by separate judgment entered this date.

This 7th day of July, 2010.



Signed By:
*Danny C. Reeves* DCR
United States District Judge